IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ETHEL VENICE POGUE,<br><br>    Plaintiff,<br><br> v.<br><br>SOUTHWEST CREDIT SYSTEMS,<br>L.P., *et al.*,<br><br>    Defendants. | No. 3:18-CV-01782-G (BT) |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this *pro se* civil action is a Motion for Summary Judgment (ECF No. 41) filed by Defendants Southwest Credit Systems, L.P. (Southwest), Christi Williams, Brian Answeeney, Melody Sasser, and Bethany Cross. For the reasons stated, Defendants' Motion should be GRANTED.

**Background**

Plaintiff filed this lawsuit against her employer and her supervisors on July 11, 2018 alleging violations of the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), and the Occupational Safety and Health Act (OSHA). Compl. 1, 3 (ECF No. 3). She also checked a box on the form complaint indicating she was suing for "Retaliation." *Id.* at 4. Plaintiff later filed an amended complaint, the live complaint in this matter, dropping her OSHA claim and adding

1

a "Title VII" claim. Am. Compl. 5 (ECF No. 22).[1] In support of her claims, Plaintiff alleges that younger employees were allowed more breaks and longer lunches than she was and that she had to transition from a full-time schedule to a part-time schedule because Defendants would not excuse her doctors' appointments. *Id.* at 4.

Plaintiff further alleges, and the parties' briefs discuss, a controversy surrounding Plaintiff's work chair. Def.'s Br. Support Mot. Summ J. 2-4 (ECF No. 42) ("Def.'s MSJ Br."); Pl.'s Resp. Def.'s Mot. Summ. J. 2 (ECF No. 53) ("Pl.'s Resp."). Plaintiff alleges that she asked Sasser, one of the heads of her department, for a new chair as an accommodation for a disability related to hip pain, but Sasser refused. Am. Compl. 4. For their part, Defendants contend that Plaintiff did not mention her need for a new chair until she emailed her supervisor on May 14, 2018 and asked for one (the "May Email"). Def.'s MSJ Br. 2; Def's App. 7, 21. Meanwhile, Plaintiff filed an OSHA complaint against Southwest on or about May 8, 2018 regarding her hip pain. *Id.* at 7. Then, on or about May 16, 2018, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) against Southwest, apparently after she was cited for attendance problems on May 4, 2018. *See id.* (noting that EEOC filing stated May 4, 2018 as incident date and discussing that Plaintiff received a "Record of Counseling" on that day for attendance).

---

[1] Plaintiff also alleged in her original complaint that Defendants Answeeney and Cross "came up with a way to take [her] commission[,] which [Plaintiff] was told that [she] was to receive each month" (Compl. 5), but she does not mention a commission at all in her Amended Complaint (*see* Am. Compl. 4).

Plaintiff's EEOC complaint lists disability discrimination and "accommodation" as among Plaintiff's issues with Southwest. *Id.* at 7, 75.

After Southwest received these complaints, Williams met with Plaintiff to discuss them. *Id.* at 7. At the meeting, the two discussed Plaintiff's chair. *Id.* at 8. Williams arranged for Plaintiff to try out two different chairs for comfort. *Id.* Days after the meeting, Williams asked which of the two chairs helped her hip pain, told Plaintiff she was "working on getting [Plaintiff] a chair," and told Plaintiff she could bring a pillow to work in the meantime to sit on. *Id.* at 9, 14-15. A few days after that, Plaintiff confirmed which of the two chairs helped her hip, and she offered to pay for half of it. *Id.* at 9. Williams assured Plaintiff she would seek the necessary approvals for the new chair and reiterated that in the meantime Plaintiff could bring a pillow to sit on. *Id.* On or around May 23, 2019, the order for Plaintiff's new chair was approved, and Williams was instructed to make the purchase. *Id.* However, Williams could not find Plaintiff's preferred model available for order. *Id.* at 10. She planned to discuss this fact with Plaintiff after she returned from a short vacation, but Plaintiff resigned while Williams was on vacation. *Id.* at 10, 18 (Plaintiff's termination report reflecting "Dissatisfied with Manager" as Plaintiff's reason for leaving). This suit soon followed.

The deadline to complete discovery in this case was February 28, 2019. Sched. Order 1-2 (ECF No. 20). Defendants served discovery requests on Plaintiff on January 9, 2019. Def.'s App. at 79. Plaintiff, however, did not respond to those requests until her deposition on March 7, 2019. *Id.* And, even then, her responses

3

were not complete. *Id.* at 80. Moreover, Plaintiff did not serve Defendants with discovery requests until March 12, 2019. April 4, 2019 Order 2 (ECF No. 44). Because Plaintiff's discovery requests were untimely, the Court did not require Defendants to answer them. *Id.*

Defendants subsequently moved for summary judgment, and Plaintiff filed an "Objection to Defendant's Motion for Summary Judgment" (Pl.'s Resp. 1-2), which the Court construes as a response. Defendants' motion is fully briefed and ripe for determination.

## Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citations omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); Fed. R.

4

Civ. P. 56(e)). All the evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

Rule 56 does not require the court to search the record for evidence to support the nonmovant's opposition to the summary judgment motion. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988) (quotation marks and citations omitted). Rather, the party opposing the summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Id.*; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)). If a party fails to address another party's assertion of fact as required by Rule 56, the court may consider the fact undisputed for purposes of the motion and grant summary judgment if the motion and supporting materials show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)-(3)). The fact that a litigant is proceeding *pro se* in a particular case does not alter these principles. *See Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that *pro se* plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.").

## Analysis

### I. Defendants are entitled to summary judgment on Plaintiff's ADA claim.

To succeed on an ADA claim, a plaintiff must establish (1) she has a disability; (2) she is qualified for the job in question; and (3) she suffered an

5

adverse employment decision because of her disability. *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 294 (5th Cir. 1998) (per curiam). With respect to the first element, Plaintiff has filed medical records with the Court that indicate she has osteoarthritis in her hip. Pl.'s First. Mot. Disc. 8. (ECF No. 25). The evidence further establishes that Plaintiff's osteoarthritis caused her to have pain in her hip, and that pain limited her ability to sit comfortably. Def.'s App. 7, 8, 21. A person has a disability if a physical or mental impairment substantially limits one or more of her major life activities. 42 U.S.C. § 12102(2)(A). Sitting is a major life activity. *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996) (per curiam); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995). For purposes of this motion, the Court finds that Plaintiff has established she has a disability under the ADA. *See Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 451 (5th Cir. 2013) (assuming without deciding osteoarthritis is a disability under the ADA).

Defendants dispute that Plaintiff told them, or provided them documentation showing, she was disabled. Def.'s MSJ Br. 8. But the ADA requires employers to reasonably accommodate *limitations*, not disabilities. *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996). And, generally, once an employee requests an accommodation, the employer is on notice of the employee's limitation. *See id.* at 164-65. Defendants acknowledge that Plaintiff interviewed with a cane and was referred for the interview by a company offering employment support services for disabled individuals. Def.'s App. 5. Moreover, it is undisputed

that Plaintiff asked for a new chair at least by the May Email. Therefore, the alleged lack of documentation supporting Plaintiff's claim of disability is inapposite.

Because Defendants do not contest Plaintiff was qualified for the position she held (Def.'s MSJ Br. 8), Plaintiff's ADA claim turns on the third element. With respect to the question whether Plaintiff suffered an adverse employment decision because of her disability, the Court construes Plaintiff's filings as alleging violations for (1) failure to accommodate her disability by failing to provide her a new chair (Pl.'s Resp. 2 (asserting that Defendants "refus[ed] to let Plaintiff purchase her own chair[, and] the company [refused] to purchas[e] the chair")); and (2) failure to excuse Plaintiff's doctors' appointments resulting in constructive discharge (Am. Compl. 4 ("I had to go partime [sic] instead of staying fulltime because of new rule [regarding] no doctor notes.")). The Court considers these allegations in turn.

### A. Defendants accommodated Plaintiff's alleged disability.

The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless doing so would impose an undue hardship. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999) (citing 42 U.S.C. § 12112(b)(5)(A)). Determining an appropriate accommodation for a disabled employee is an interactive process between the employer and the employee. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735 (5th Cir. 1999). The ADA does not require that the employer move with maximum speed to complete the process of choosing and

7

providing an accommodation. *Id.* at 737. The employer must simply engage in the process in good faith. *Schilling v. La. Dep't of Transp. & Dev.*, 662 F. App'x 243, 246 (5th Cir. 2016). If either party causes delay in the process, however, it may indicate a lack of good faith. *Id.*

Although Plaintiff alleges she requested a new chair months before the May Email, Defendants tendered summary judgment evidence to the contrary. Def.'s App. 21. In particular, Defendants have provided an affidavit in which Sasser swears Plaintiff never asked her for a new chair. *Id.* Plaintiff presents no summary judgment evidence that rebuts Defendants' evidence on the matter. Indeed, by her failure to respond to Defendants' discovery requests, Plaintiff is deemed to have admitted that the May Email is the first time she requested a new chair and that she has no evidence she requested a new chair prior to May 14, 2018—the date of the May Email. *Id.* at 46, Req. for Adm. 36, 37.[2]

Further, Defendants met their obligations under the ADA following the May Email. Defendants engaged in an "interactive process" during which Williams and Plaintiff settled on an appropriate new chair for Plaintiff, her requested

---

[2] Federal Rule of Civil Procedure 36 allows a party to request from any other party admissions to a broad range of factual matters. *See* Fed. R. Civ. P. 36(a)(1). Under the rule, a party served with a request for admission has 30 days to answer or object to the request. Fed. R. Civ. P. 36(a)(3). If a party fails to timely respond, the matter is deemed admitted and is "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). If the request for admission concerns an essential issue, the failure to respond to the request can result in a grant of summary judgment against the nonresponding party. *See In re Carney*, 258 F.3d 415, 420 n.6 (5th Cir. 2001) (collecting cases that grant summary judgment on basis of deemed admissions).

accommodation. Defendants facilitated this interactive process without delay. Less than three weeks after Plaintiff requested an accommodation, Williams attempted to order the selected chair and discovered it was not available. Def.'s App. 8-10. Plaintiff quit her job before Williams had the opportunity to discuss alternatives with Plaintiff. *Id.* at 10. In fact, Plaintiff quit her job less than one month after requesting the accommodation. *See id.* at 8-10. Under these facts, no reasonable jury could conclude that Defendants delayed in bad faith.

Because the summary judgment evidence establishes that Defendants met their obligations with respect to Plaintiff's requested accommodation for a new chair, Defendants are entitled to summary judgment on Plaintiff's ADA accommodation claim.

B. Plaintiff presents no summary judgment evidence of constructive discharge.

An employee's resignation is an adverse employment action if it constitutes a constructive discharge. *See Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000). Employee resignation is a constructive discharge when the "employer deliberately makes an employee's working conditions so intolerable" such that the employee's resignation is involuntary. *Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 802 (5th Cir. 2018) (quoting *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005)). In other words, the circumstances must be so intolerable that a reasonable employee would feel compelled to resign. *Brown*, 207 F.3d at 782.

Here, Plaintiff presents no evidence indicating she felt compelled to resign. Plaintiff only baldly alleges her doctors' appointments were not excused, that she had to transition from full-time to part-time, and (in her original complaint only) that her commission was taken away. Compl. 5; Am. Compl. 4. However, she provides no evidence supporting any of these allegations. In fact, Plaintiff is deemed to have admitted that she did not ask for accommodations for her doctors' appointments. Def.'s App. 33, Req. for Adm. 11, 12. Defendants provide uncontroverted summary judgment evidence that, to the extent Plaintiff's commission or bonus was ever "short," it was because Plaintiff did not earn it. Def.'s App. 9-10. And Plaintiff is deemed to have admitted she has no evidence that Defendants withheld any portion of her bonus based on disability. *Id.* at 32, Req. for Adm. 3.

In sum, Plaintiff presents no summary judgment evidence in support of a claim for constructive discharge. Therefore, Defendants are entitled to summary judgment with respect to that claim.

II. Defendants are entitled to summary judgment on Plaintiff's ADEA claim.

To establish an ADEA claim, a plaintiff must prove (1) she is a member of a protected class; (2) she was qualified for the position that she held; (3) she was discharged; (4) following discharge she was replaced by someone outside the protected class, someone younger, or she was otherwise discharged because of her age. *Brown*, 207 F.3d at 781. As discussed above, when an employee resigns, she may satisfy the discharge requirement by proving constructive discharge. *Id.* at

10

782. The Fifth Circuit has provided the following factors for determining whether an employee has been constructively discharged under the ADEA: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement. *Id.* (citation omitted).

Here, it is undisputed that Plaintiff resigned. *See* Def.'s App. 18. Defendants provide Plaintiff's termination report stating Plaintiff left her position with Southwest due to dissatisfaction with her manager. Plaintiff has in no way rebutted or called into question the veracity of this report. Moreover, Plaintiff presents absolutely no evidence pertaining to any of the relevant constructive discharge factors. *See Gordon v. Acosta Sales & Mktg., Inc.*, 622 F. App'x 426, 431 (5th Cir. 2015) (finding summary judgment for employer on constructive discharge claim appropriate where summary judgment evidence did not support finding that employee endured any of the *Brown* factors). While the summary judgment evidence indicates Plaintiff was dissatisfied with her immediate supervisor (Def.'s App. 8), Plaintiff presents no evidence of harassment or otherwise "intolerable" conduct. And, while Plaintiff alleges that she transitioned from full-time to part-time and that her commission or bonus was withheld (Compl. 5; Am. Compl. 4), Defendants' summary judgment evidence establishes that Plaintiff requested to be a part-time employee and that none of Plaintiff's commission or bonus was actually

11

withheld (Def.'s App. 9-10). Plaintiff is deemed to have admitted both of these facts. *Id.* at 32, Req. for Adm. 2, 5.

Because Plaintiff resigned and she presents no evidence she was constructively discharged, Defendants are entitled to summary judgment on Plaintiff's ADEA claim.

### III. Plaintiff has not exhausted her administrative remedies with respect to her Title VII claim, and, in any event, it fails on the merits.

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment against any individual due to her race, color, religion, sex, or national origin. *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 348 (2013) (quoting 42 U.S.C. § 2000e-2(a)). Before bringing a Title VII claim in federal court, however, a claimant must first exhaust her administrative remedies by filing a timely charge of such discrimination with the EEOC. *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) (citing 42 U.S.C. § 2000e-5(e)(1)). It is a procedural prerequisite to a plaintiff's suit. *Id.* When a plaintiff has failed to exhaust her administrative remedies, summary judgment for the defendant is appropriate. *See Phillips v. Caris Life Scis., Inc.*, 715 F. App'x 365, 369-70 (5th Cir. 2017) (per curiam).

Generally, defendants must assert in their answer any "avoidance or affirmative defense" they wish to bring. Fed. R. Civ. P. 8(c)(1). Failure to do so can result in waiver of the defense. *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008). However, if the defendant does raise a defense "at a pragmatically sufficient

12

time, and the plaintiff [is] not prejudiced in its ability to respond," the defense is not waived. *Solomon v. Spalitta*, 484 F. App'x 883, 885 (5th Cir. 2012) (quoting *McDorman*, 521 F.3d at 385-86). Therefore, defenses raised for the first time on summary judgment may be considered under the proper circumstances. *Id.*; *United States v. Reed*, 2014 WL 462620, at *8 (N.D. Tex. Feb. 5, 2014) (finding defendant did not waive affirmative defense raised for first time on summary judgment where trial was three months away and plaintiff presented no evidence of prejudice by defendant's delay).

Although Defendants failed to address administrative exhaustion in their Amended Answer (*see* Am. Answer 3 (ECF No. 26)), the Court nonetheless considers the issue on summary judgment, and it is dispositive. Plaintiff did not exhaust her administrative remedies with respect to a Title VII claim. While she did file an EEOC charge of discrimination against Southwest, in it she did not allege discrimination under Title VII, nor did she indicate she suffered discrimination based on race, color, sex, religion, or national origin. Def's App. 75. To the contrary, in her EEOC charge, Plaintiff *only* alleged discrimination under the ADA and ADEA, and she indicated only that she suffered discrimination on the basis of age, disability, and retaliation. *Id.* Therefore, she did not exhaust her administrative remedies to bring a Title VII claim. *See Castro v. Tex. Dep't of Criminal Justice*, 541 F. App'x 374, 379 (5th Cir. 2013) (per curiam) (holding employee did not exhaust claims based on race and sex discrimination by filing EEOC charge only alleging age discrimination); *Kretchmer v. Eveden, Inc.*, 374 F. App'x 493, 495 (5th

13

Cir. 2010) (per curiam) (holding employee did not exhaust claims based on sex discrimination by filing EEOC charge only alleging age and religion discrimination).

Plaintiff is not prejudiced by Defendants' failure to raise administrative exhaustion until summary judgment. While discovery had closed at the time Defendants moved for summary judgment, Plaintiff is not prejudiced by an inability to engage in discovery regarding this defense. Indeed, Plaintiff did not meaningfully participate in discovery during the discovery period. She did not timely respond to any of Defendants' requests, and she did not timely serve her own requests. Def.'s App. 79-80; April 4, 2019 Order 2. Finally, Plaintiff is not prejudiced by Defendants' delay in raising administrative exhaustion because her Title VII claim fails on the merits regardless of her failure to exhaust her administrative remedies. Plaintiff brings a Title VII claim, but she does not allege discrimination on the basis of any Title VII-protected characteristic. Her Amended Complaint and her response to Defendants' Motion for Summary Judgment are devoid entirely of the words "race," "color," "sex," "religion," and "national origin." *See* Am Compl. 1-5; Pl.'s Resp. 1-3. Additionally, Plaintiff did not elicit discovery from Defendants that raises a genuine dispute as to whether Defendants discriminated against Plaintiff based on her race, color, sex, religion, or national origin.

Plaintiff cannot bring a Title VII claim because she has not exhausted administrative remedies with respect to Title VII. Moreover, her Title VII claim

14

fails on the merits, as she has not presented any evidence that Defendants discriminated against her on the basis of her race, color, sex, religion, or national origin. Therefore, Defendants are entitled to summary judgment on Plaintiff's Title VII claim.

### IV. Defendants are entitled to summary judgment on any "retaliation" claim.

The ADA, the ADEA, and Title VII all prohibit retaliation. To establish a retaliation claim under any one of them requires that the plaintiff show (1) she was engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (enumerating elements of Title VII retaliation claim); *DeBlanc v. St. Tammany Par. Sch. Bd.*, 640 F. App'x 308, 312 (5th Cir. 2016) (enumerating elements of ADA retaliation claim); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001) (enumerating elements ADEA retaliation claim).

It is not clear by her Amended Complaint whether Plaintiff intended to allege retaliation under the ADA, the ADEA, Title VII, or all three. Defendants appear to construe Plaintiff's Amended Complaint as only alleging retaliation under the ADA. Def.'s MSJ Br. 13-14 (arguing Plaintiff fails to establish an ADA retaliation claim). But the Court gives Plaintiff the benefit of the doubt and addresses a retaliation claim under all three statutes.

Defendants are entitled to summary judgment on Plaintiff's claim for retaliation under the ADA. Requesting an accommodation for a disability is a protected activity under the ADA. *Hammond v. Jacobs Field Servs.*, 499 F. App'x 377, 383 (5th Cir. 2012) (per curiam). On the other hand, it is not clear whether filing an OSHA complaint is a protected activity under the ADA. *Alford v. Turbine Airfoil Coating & Repair, LLC*, 2014 WL 1516336, at *12 (S.D.N.Y. Apr. 17, 2014); *see also Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (holding that the filing of a worker's compensation claim is not protected under the ADA). Nonetheless, Plaintiff cannot prevail on a retaliation claim under the ADA because there is no evidence she suffered an adverse employment action. As discussed above, Plaintiff was not constructively discharged. Moreover, Defendants met their obligation to accommodate Plaintiff's disability.

Defendants are likewise entitled to summary judgment on Plaintiff's claim for retaliation under Title VII because there is no evidence that Plaintiff engaged in any Title VII-protected activity. While Plaintiff filed an EEOC charge against Southwest, as discussed above, it does not allege discrimination based on any Title VII-protected class. Moreover, Plaintiff does not allege or present evidence that she ever complained that Defendants discriminated against her on the basis of her race, color, sex, religion, or national origin.

Finally, Defendants are entitled to summary judgment on Plaintiff's ADEA retaliation claim. It is undisputed that Plaintiff engaged in a protected activity by filing an EEOC charge alleging age discrimination. Def.'s App. 75; Def.'s MSJ Br.

16

13 ("The only activity that Plaintiff engaged in which could be considered a protected activity was filing complaints with the EEOC . . . ."). Further, Plaintiff alleges in the Amended Complaint that she discussed with Cross being treated differently than younger employees with respect to breaks, lunches, and overtime. Am. Compl. 4. Making such complaints is a protected activity. *See Fanning v. Metro. Transit Auth. of Harris Cty., Tex.*, 141 F. App'x 311, 314 (5th Cir. 2005) (per curiam) (holding that filing a charge of discrimination and reporting discriminatory practices to a supervisor are protected activities under the ADEA). However, Plaintiff presents no evidence that she complained about being treated differently because of her age. And, even if she had, Plaintiff suffered no adverse employment action after making those complaints or after filing the EEOC charge. Indeed, Defendants present summary judgment evidence that upon learning about Plaintiff's EEOC complaint, they immediately intervened to determine how they could best address Plaintiff's concerns. Def.'s App. 7-8. Defendants did not fire Plaintiff. Instead, she resigned, and, as discussed above, Plaintiff's resignation cannot be considered a constructive discharge.

Regardless under which statutes she intended to allege retaliation, Defendants are entitled to summary judgment.

## Recommendation

For the foregoing reasons, the Court should GRANT Defendants' Motion for Summary Judgment (ECF No. 41) and DISMISS with prejudice all of Plaintiff's claims and causes of action.

**SIGNED** October 30, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, § 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

18